**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BENJAMIN CORDERO,
Representative Payee for Diana M.
Cordero, T.R.C., and N.R.C.,

          Plaintiff,

vs.                                         Case No. 3:12-cv-953-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
_____/

## OPINION AND ORDER[1]

### I. Overview

Benjamin Cordero ("Plaintiff"), the representative payee for Diana M. Cordero ("Beneficiary") and Beneficiary's minor children, T.R.C. and N.R.C. (the "minor children"), is appealing the Commissioner of the Social Security Administration's ("Administration('s)") final decision denying a request for wavier of recoupment of an overpayment of disability insurance benefits ("DIB") and assessment of the overpayment against Plaintiff and Beneficiary in the amount of $102,537.40. Beneficiary, a physician, was found to be disabled by the Administration and entitled to DIB as of February 4, 1997. Transcript of Administrative Proceedings (Doc. No. 34; "Tr." or "administrative transcript"), filed April 30, 2014, at 13, 29, 116, 276. The dependant minor children began receiving child's insurance benefits ("CIB") on Beneficiary's earnings record in August 1997. Tr. at 13, 279-80. When DIB was awarded, the Administration appointed a representative payee to handle the benefits

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 30), filed April 16, 2014; Reference Order (Doc. No. 32), signed April 17, 2014 and entered April 18, 2014.

apparently because Beneficiary's mental impairment precluded her from managing her finances. Tr. at 21, 305, 646-47. Plaintiff, Beneficiary's brother, Tr. at 647, 649, 700, has been the representative payee for Beneficiary since 2002 or 2003, Tr. at 278-80 (Administration documents showing 2002), 716 (Plaintiff testifying he became the personal representative in 2003).

In September 2006, the Administration informed Plaintiff that as of March 2003, due to Beneficiary's return to substantial work as a physician, Beneficiary was no longer eligible for DIB and that Beneficiary's children were no longer eligible for CIB. Tr. at 77-79, 80-82, 83-87. Plaintiff was further informed by the Administration that from the date of ineligibility through the stopping of payments in September 2006, Beneficiary was overpaid $68,939.40, and the minor children were overpaid $16,799.00 each, for a total of $102,537.40. Tr. at 83-87, 319-22.[2] Plaintiff was advised to "refund" the overpayment to the Administration; alternatively, Plaintiff could appeal the "overpayment determination" or request a waiver of the requirement to return the overpayment. Tr. at 77-78, 80-81, 83-84.

On November 1, 2006, Beneficiary filed a "Request for Waiver of Overpayment Recovery or Change in Repayment Rate," in which Beneficiary requested that the Administration waive collection of the overpayment. Tr. at 100-07, see also Tr. at 414-21 (duplicate). That same date, Beneficiary submitted a "Request for Reconsideration" in which she contended that the Administration wrongly determined that certain months should count for purposes of determining her return to work. Tr. at 110.

---

[2] The original notifications from the Administration state that the minor children were each overpaid $17,232.00, Tr. at 77, 80, but the September 2006 payments to the minor children were stopped, resulting in an adjusted overpayment amount of $16,799.00, Tr. at 319-22.

On November 7, 2006, the Administration issued a "Notice of Revised Decision" in which it was again determined that Beneficiary was not entitled to payments beginning in March 2003. Tr. at 111-13; see also Tr. at 306. On December 2, 2006, the Administration denied Beneficiary's request for waiver. Tr. at 126-27. On December 27, 2006, Beneficiary requested a hearing regarding the Notice of Revised Decision. Tr. at 128.

Beneficiary then had a "personal conference" with the Administration on January 17, 2007 regarding the waiver request. Tr. at 129. Following the personal conference, on January 23, 2007, the Administration again denied the request, Tr. at 129-33, noting that Beneficiary had returned to work and her "earnings exceed $10,000 per month," Tr. at 132.

On May 17, 2007, an Administrative Law Judge ("ALJ") convened a hearing but continued it to give Beneficiary the opportunity to attempt to find someone to represent her. Tr. at 635-37. On July 3, 2007, the ALJ again convened a hearing and granted Beneficiary's request for additional time to consult with her representative prior to proceeding. Tr. at 638-40. On September 28, 2007, the ALJ held a hearing, during which she heard testimony from Beneficiary, who was represented by counsel. Tr. at 641-74. Beneficiary agreed at the hearing that she was not disputing having received the overpayment. Tr. at 643. Rather, she confirmed that she was focusing on the waiver issue, and she also confirmed she "disagree[ed] as to [her] ability to pay it back more than the fact that [she] received the money[.]" Tr. at 643. Beneficiary's counsel represented that Beneficiary "realize[d] . . . she was overpaid" and that Beneficiary was "willing to try and repay back that overpayment." Tr. at 661-62. In fact, counsel requested that the ALJ set up a repayment plan for Beneficiary. Tr. at 662.

On January 10, 2008, the ALJ issued a decision denying Beneficiary's request for a waiver of recovery of the overpayment. Tr. at 331-34. On June 11, 2010, the Appeals Council granted Beneficiary's request for review; vacated the ALJ's decision; and remanded the matter for the ALJ to consider whether joint and several liability applied to Beneficiary and Plaintiff for the overpayment regarding the Beneficiary and/or the minor children, and to correct some clerical issues. Tr. at 304-07.

The ALJ then held another hearing on October 19, 2010, during which Beneficiary represented herself. Tr. at 675-706. During this hearing, Beneficiary challenged the way in which the overpayment was calculated, Tr. at 695, among other things. Because Plaintiff did not appear for the hearing, and because Beneficiary requested a continuance to review her file, the ALJ continued the hearing. See Tr. at 679, 688, 705. The hearing reconvened on March 7, 2011. Tr. at 707-47. Plaintiff and Beneficiary were both present and represented themselves. Tr. at 707.

On May 17, 2011, the ALJ issued another decision ("Decision") denying Beneficiary's request for a waiver of recovery of the overpayment and finding that Plaintiff and Beneficiary are jointly and severally liable for repayment of $102,537.40 in overpaid benefits. Tr. at 13-25. Beneficiary then requested review by the Appeals Council and submitted additional evidence in support of her request. Tr. at 596-634. On June 27, 2012, the Appeals Council denied Beneficiary's request for review, Tr. at 7-9, making the ALJ's May 17, 2011 Decision the final decision of the Commissioner.

Plaintiff initiated this action through counsel on August 24, 2012 by filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision. Specifically, the

-4-

Complaint states that Plaintiff "hereby petitions the Court for review of the Order of the . . . Administration entered on June 27, 2012"; attached to the Complaint is the Appeals Council's June 27, 2012 Order denying the request for review. Through a later-filed "more definite statement," see Fed. R. Civ. P. 12(e), Plaintiff discusses the request for waiver of the overpayment, but he contends that the relief sought from this Court is the following: "review [Beneficiary's] entitlement to disability benefits, recalculate the periods of entitlement to include from December 2003 until May 2005, and recalculate and adjust the payments accrued viz á viz the payments received." Plaintiff's Response to Defendant's Motion for More Definite Statement (Doc. No. 18), filed June 24, 2013, at 2-3,[3] 4 ¶ 5.[4]

On May 1, 2014, the Court entered a Scheduling Order (Doc. No. 35) directing the parties to file memoranda in support of their respective positions. Plaintiff was ordered to "identify with particularity the grounds upon which the administrative decision is being challenged." Id. at 1. Plaintiff was warned that "[a]ny such challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards" and that "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development." Id.

Through his memorandum, Plaintiff raises the following issues on appeal: 1) whether "the ALJ "err[ed] in finding that [] Plaintiff was not entitled to [DIB], and the dependent minor

---

[3] Citations to the more definite statement are to the pagination assigned by the Court's electronic filing system.

[4] Following the filing of the more definite statement, the matter was remanded under sentence six of 42 U.S.C. § 405(g) for further administrative proceedings because the Administration was unable to locate the tape recording of the October 19, 2010 hearing. See Report and Recommendation (Doc. No. 23), entered November 6, 2013; Order (Doc. No. 27), entered December 10, 2013. On April 18, 2014, the case was reopened. See Order (Doc. No. 31), entered April 18, 2014.

children, from the moment that [] Plaintiff returned to gainful employment on a [t]rial work period basis"; and 2) whether the ALJ "err[ed] in finding that [] Plaintiff was not entitled to or granted [e]xpedited [r]einstatement after her stopping from work due to a relapse of her qualifying medical condition[.]" Plaintiff's Brief in Support of the Petition for Review (Doc. No. 40; "Pl.'s Br."), filed September 29, 2014, at 11, 13 (emphasis omitted). On December 19, 2014, Defendant responded by asserting that the issue is "whether substantial evidence supports the [ALJ]'s Decision that [Beneficiary] and Plaintiff were not without fault in causing the overpayment of $102,537.40." Memorandum in Support of the Commissioner's Decision (Doc. No. 43; "Def.'s Mem.") at 1 (emphasis and capitalization omitted). Upon review of the parties' arguments and the administrative transcript, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. Standard of Review

This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)); see also Coulston v. Apfel, 224 F.3d 897, 901-02 (8th Cir. 2000) (Bye, J., concurring) (in a case in which the plaintiff's fault in causing a payment of benefits was at issue, noting that when reviewing the Commissioner's final decision, "we are not concerned with whether [the plaintiff] met his burden of proving to the Commissioner that he was not at fault [for overpayment]" and instead the sole concern is whether the decision regarding waiver is supported by substantial evidence). "Substantial evidence is something 'more than a mere

scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### III. Discussion

### A. Waiver of Recoupment of the Overpayment

Generally, the Social Security Act ("the Act") requires that when a social security beneficiary has been overpaid, the Administration must recoup the overpaid benefits. 42

U.S.C. § 404(a)(1)(A)[5]; see also 20 C.F.R. § 404.501(a).  In certain situations, however, the Act directs the Administration to waive recoupment of an overpayment:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.  In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

42 U.S.C. § 404(b); see also 20 C.F.R. § 404.506(a).  Thus, the Act and the Code of Federal Regulations ("Regulations") establish a two-prong test to determine whether a waiver of recoupment of overpayment is appropriate.  First, it must be determined whether the overpaid individual was at fault in connection with the overpayment; and second, it must be determined whether recovery of the overpayment would defeat the purpose of title II of the Act or be against equity and good conscience.  See 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a).  "The burden is upon the claimant to establish the negative prerequisite ('without fault'), before the [Commissioner] considers the second tier of the waiver statute."

---

[5] Section 404(a)(1)(A) provides in relevant part:

With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under section 3720A of Title 31, or shall apply any combination of the foregoing.

42 U.S.C. § 404(a)(1)(A) (emphasis added).

Viehman v. Schweiker, 679 F.2d 223, 227 (11th Cir. 1982); see also Kosloff v. Comm'r of Soc. Sec., 581 F. App'x 811, 812 (11th Cir. 2014) (citation omitted).

An individual may be found not to be without fault if the overpayment "resulted from: (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have expected to know was incorrect." 20 C.F.R. § 404.507.

The phrase "defeat the purpose of title II" has been defined by the Regulations to mean "to deprive a person of income required for ordinary and necessary living expenses. This determination depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." 20 C.F.R. § 404.508(a); see also Erickson v. Comm'r of Soc. Sec., 431 F. App'x 809, 812 (11th Cir. 2011) (citation omitted). In making the determination of whether the purpose of title II would be defeated, an ALJ may consider all of an "individual's financial resources in addition to her or his income." Valley v. Comm'r of Soc. Sec., 427 F.3d 388, 391 (6th Cir. 2005) (citing 20 C.F.R. § 404.508(a)). The Regulations provide what is included in "ordinary and necessary expenses":

> (1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e.g., life, accident, and health insurance including premiums for supplementary medical benefits under title XVIII), taxes, installment payments, etc.;
> (2) Medical, hospitalization, and other similar expenses;
> (3) Expenses for the support of others for whom the individual is legally responsible; and

> (4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

20 C.F.R. § 404.508(a).

The Regulations further provide that recovery of an overpayment is against equity and good conscience if an individual "[c]hanged his or her position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself[.]"  20 C.F.R. § 404.509(a)(1).

At the administrative level, a claimant bears the burden of showing he or she is eligible for a waiver of collection of overpayment. See, e.g., 20 C.F.R. § 404.506(c) (providing that the individual seeking waiver of collection of overpayment "gives SSA information to support his/her contention that he/she is without fault in causing the overpayment. . . and that adjustment or recovery would either defeat the purpose of title II of the Act . . . or be against equity and good conscience. . ."); Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1042 (2d Cir. 1984) (citations omitted).

The Administration has taken the position that in certain situations, when overpayment is made to a representative payee, both the payee and the beneficiary can be held jointly and severally liable. See SSR 64-7, 1964 WL 3608, at *2.  As previously stated, the ALJ found that joint and several liability was appropriate in the instant case.  Therefore, in denying the request for a waiver, the ALJ made findings with respect to both Plaintiff and Beneficiary.  Tr. at 17-25.

The ALJ ultimately found both Plaintiff and Beneficiary not without fault, Tr. at 25; accordingly, the ALJ was not required to make any other findings before declining to waive collection of the overpayment and assess the payment jointly and severally.  Plaintiff's

-10-

stated issues on appeal do not challenge the ALJ's finding that Plaintiff and Beneficiary are ineligible for a waiver. See generally Pl.'s Br. Upon review of the ALJ's thorough and well-reasoned Decision, the undersigned finds supported by substantial evidence the denial of the waiver request and the assessment of the overpayment jointly and severally against Plaintiff and Beneficiary.

## B. Amount of Overpayment

The specific issues Plaintiff raises on appeal have to do with the ALJ's computation of the overpayment amount. Plaintiff's first stated issue is whether the ALJ erred in evaluating Beneficiary's trial return to work and the impact that the trial work period had on the calculation of the overpayment. Pl.'s Br. at 11-13. Plaintiff's second stated issue is whether the ALJ erred with respect to considering the impact that Beneficiary's alleged expedited reinstatement request had on the calculation of the overpayment. Id. at 13-14. Because these issues are related, they are addressed together.

The Regulations provide for a "trial work period," during which a claimant "may test [his or her] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). The claimant is allowed to "perform services . . . in as many as 9 months, but these months do not have to be consecutive." Id. Regarding a request for expedited reinstatement, after an individual's DIB is terminated, he/she has the ability to request expedited reinstatement of those benefits "when [his/her] medical condition no longer permits them to perform [SGA] within 60 months of their prior termination." POMS DI 13050.001 (A), available at, http://policy.ssa.gov/poms.nsf/lnx/0413050001 (last visited Mar. 25, 2015). Expedited reinstatement "is thus a safety net for those individuals who make use of SSA-administered

work incentives, successfully return to work, and, consequently, lose their entitlement to, or eligibility for, Title II or Title XVI benefits and payments." Id. "An individual reinstated under [expedited reinstatement] is given a 24-month initial reinstatement period . . . [after which] a Title II beneficiary is provided a new trial work period[.]" Id.

> Here, the ALJ made the following findings in relation to Beneficiary's trial work period:
>
> A claimant is entitled to continue to receive payments while she tests her ability to work. In this case, in November 2006, the Agency determined that [Beneficiary] had a trial work period of nine months, which began in April 1999 when she returned to work [engaging in substantial gainful activity ("SGA")] and ended in December 1999. After the trial work period is complete, a claimant's disability will end if her work activity shows an ability to do substantial work. The Agency pays benefits for the month disability ends and the following two months no matter how much is earned, which in this case was from January 2000 through March 2000. A claimant also has an extended period of eligibility, which begins after the end of the trial work period and lasts for 36 months. During this period, a claimant's benefit payments are reinstated in any month in which his or her work is not substantial. In this case, [Beneficiary's] extended period of eligibility began in January 2000. Her benefits were reinstated as of April 2000 when she stopped working, and her benefits were terminated in March 2003 when her earnings exceeded SGA.
> . . .
> At the October 18, 2010 hearing, [Beneficiary] acknowledged that she owed some money, but she did not think the amount was right. Although she made a general statement that the calculation was wrong, [Beneficiary] made no specific allegations of error with regard to either (1) the posting of her earnings or (2) the computation of her overpayment amount[,] nor did she provide any documentation to show that any such errors were made.

Tr. at 18-19 (citations omitted).

On appeal, Plaintiff argues, without any citation to the administrative transcript, that Beneficiary actually had two trial work periods: May 2000 through February 2001; and March 2003 through November 2003. Pl.'s Br. at 13. Plaintiff contends that Beneficiary "was not able to return to work until April of 2005." Id. Plaintiff represents that Beneficiary

received DIB payments until November 2005. Id. at 9. According to Plaintiff's calculations, then, the overpayment occurred over a span "of about seven (7) or eight (8) months," and resulted in a total overpayment of $16,000.00 to $18,0000.00 rather than the $102,537.40 found by the ALJ. Id. Plaintiff also contends that the ALJ erred in addressing Beneficiary's alleged request for expedited reinstatement and its impact on the calculations. Id. at 13-14.

Defendant counters that the Court does not have subject-matter jurisdiction to review the amount of the overpayment because Plaintiff has not received a final decision from the Administration on that issue. Def.'s Mem. at 15-18. Alternatively, if the Court does have subject-matter jurisdiction to review the amount of the overpayment, Defendant contends the ALJ's findings regarding the overpayment – including the findings relating to the trial work period and the expedited reinstatement – are supported by substantial evidence. Id. at 18-19.

As grounds for contending the Court does not have subject-matter jurisdiction to review the amount of the overpayment, Defendant points to the following: 1) Beneficiary's agreement with the ALJ during the September 28, 2007 hearing that her dispute focused on her ability to pay back the overpayment; 2) the ALJ's initial January 2008 decision that ruled solely on the waiver request; and 3) the Appeals Council's remand order that directed the ALJ to consider the matter of joint and several liability (and is silent as to the amount of the overpayment). See Def.'s Mem. at 17-18. Yet, as Defendant also recognizes, see id., the ALJ on remand did not confine the discussion in her May 17, 2011 Decision to the waiver issue. She also made explicit findings regarding the amount of the overpayment and

the alleged request for expedited reinstatement in response to Beneficiary's contentions during the remand hearing about these matters. See Tr. at 18-20.

Notwithstanding that the ALJ made findings regarding the amount of the overpayment, Defendant contends that the ALJ's "ultimate" ruling was confined to the waiver issue. Def.'s Mem. at 18 (citing Tr. at 25). The undersigned disagrees. The ALJ stated initially in the Decision that "[t]he general issue is whether [Beneficiary] was overpaid benefits within the meaning of Section 204 of the Social Security Act and, if so, whether recovery of the overpayment may be waived." Tr. at 15. Necessary to the determination of whether a claimant was overpaid is the amount of the overpayment, if any. Although it is true that the last sentence of the ALJ's Decision focuses on waiver, both that sentence and the sentence just preceding it contain the final amount of the overpayment ($102,537.40). See Tr. at 25. Additionally, were the Decision confined solely to the waiver issue, the extensive findings of fact made by the ALJ with respect to the amount would be superfluous. In sum, the undersigned finds the ALJ decided the issue of the amount of the overpayment. Since the Appeals Council denied review, the ALJ's Decision is the final, reviewable decision of the Administration. Consequently, this Court has subject-matter jurisdiction to review it. See 42 U.S.C. § 405(g) (providing for judicial review "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . ."); 20 C.F.R. § 404.981 (providing that a claimant "may file an action in a Federal district court within 60 days after the date [he or she] receive[s] notice of the Appeals Council's action").

Upon review of the ALJ's findings regarding the trial work period, the undersigned finds them to be supported by substantial evidence. Beneficiary was notified by the Administration in December 2001 that her trial work period had ended in December 1999. Tr. at 34, 37. Plaintiff points to no evidence in the administrative transcript that supports his contention that Beneficiary was entitled to the second trial work period. Before the ALJ, Beneficiary contended that "if she had been given an expedited reinstatement [in November 2003 following a relapse in her condition], she would have been entitled to another trial work period." Tr. at 20. The ALJ, however, found that Plaintiff and Beneficiary had failed to produce any documentation of a request for expedited reinstatement, and the Agency had no record of having received one. Tr. at 20. "[E]ven if [Beneficiary] would have filed a request for expedited reinstatement," continued the ALJ, "she would not have been entitled to a new trial work period under the expedited reinstatement provisions until the expiration of a 24-month initial reinstatement period." Tr. at 20 (citing POMS DI 13050.001 (A), available at, http://policy.ssa.gov/poms.nsf/lnx/0413050001 (last visited Mar. 25, 2015)). Because Beneficiary "returned to work as a physician after only 17 months . . . well before such a period would have expired . . . , she would not have been entitled to an additional trial work period even if she had filed for an expedited reinstatement of benefits." Tr. at 20. While Plaintiff contends Beneficiary was entitled to expedited reinstatement of benefits and concedes Beneficiary's "application is now allegedly missing from her file," he fails to address the reasons articulated by the ALJ why the request would have had no bearing on

a second trial work period. Pl.'s Br. at 13-14. The ALJ's findings are supported by substantial evidence and need not be disturbed.[6]

## IV. Conclusion

The ALJ's Decision is supported by substantial evidence. After due consideration, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 27, 2015.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw

Copies to:

Counsel of Record

---

[6] To the extent Plaintiff is attempting to challenge the Administration's supposed denial of Beneficiary's alleged expedited reinstatement request, see Pl.'s Br. at 14, this Court cannot review that decision (if it was made) because there is no final decision of the Administration on that issue, see 42 U.S.C. § 405(g).